# Fearon *v.* Little, Appellant.

*Practice, C. P.—Trial—Points for charge—Answers to points.*

1. The court is not required to read to the jury and specifically rule upon points submitted where the points are substantially answered in the general charge. This is particularly so when the points are not relevant to the proofs and the issue being tried.

*Stocks—Stockbrokers—Purchase upon margin—Gambling transaction —Wagering contracts—Promissory note—Interest on balances—Usury.*

2. A purchase of stock on margin for speculation is not necessarily a gambling transaction. If it is the intention of the parties that a real purchase shall be made by a transfer of the stock, although the delivery may be postponed or made to depend upon future conditions, the transaction is legal; if it is the intention that there is not to be a delivery to complete the purchase but that the account is to be settled on the basis of a rise or fall in prices, it is a mere wager, and the contract cannot be enforced by either party.

3. In an action by a stockbroker to recover on a promissory note given him for the balance due upon stocks purchased and sold by him for the maker, where the broker produces his monthly statements covering every stock transaction, and testifies that every share of stock

appearing on the statements had been purchased by him outright, that the certificates therefor had been delivered to him, that every share of stock purchased for the defendant which defendant ordered to be sold, had been actually sold to the purchaser, and produces on the trial the checks given for the stock purchased, and the defendant in no way contradicts this testimony, but testifies that his understanding with the broker was that the latter was to buy the stocks outright, and that the transactions between them were not for the matching of differences, but that the stock was to be actually bought and sold as by him directed, the contract is not a wagering contract, and it can avail the defendant nothing to have the jury instructed to consider such circumstances as the extent of the transactions, the aggregate of the amounts involved and his own financial circumstances.

4. Stock transactions are not to be judged wagering whenever it appears that the losing party indulged beyond the point of prudence as measured by his financial ability.

5. Where at the end of each month a stockbroker renders to a customer a statement of his account, including interest on the balance shown, he is entitled to charge interest on this balance, where it appears that the monthly statements were accepted by his customer as correct and approved by him in writing.

6. When an account is settled and balanced up, the balance bears interest notwithstanding that interest has been added in the account.

Argued Jan. 13, 1910. Appeal, No. 222, Jan. T., 1909, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1906, No. 2,503, on verdict for plaintiff in case of William F. Fearon, Trading as William F. Fearon & Company, v. Henry Ashton Little. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit on a promissory note. Before AUDENRIED, J.

The defendant claimed that the note was given as a result of stock dealings between the parties which were gambling transactions. The evidence showed that the stock transactions embraced a large number of transactions, amounting in the aggregate to $12,000,000 in the course of two years, and that at no time did the defendant have more than about $35,000 or $40,000 of collaterals against loss.

*Error assigned* among others was in refusing to specifically charge on the points presented by defendant.

*Joseph W. Shannon,* for appellant.—The court erred in refusing to charge as requested: Gaw v. Bennett, 153 Pa. 247; Albertson v. Laughlin, 173 Pa. 525; Dauler v. Hartley, 178 Pa. 36; Kear v. Heilner, 190 Pa. 276.

A debtor is not bound to pay an excess of interest over six per cent: Heath v. Page, 63 Pa. 108; Miners' Trust Co. Bank v. Roseberry, 81 Pa. 309.

The real question in the case is, the intention of the plaintiff to deliver the stock to the defendant, and the law of this state leaves the question to the jury to decide the intention, taking into consideration the rapidity and number and amount of the transactions, the amount of margins and other circumstances: Snider v. Harvey, 215 Pa. 538; Jennings v. Morris, 211 Pa. 600; Fareira v. Gabell, 89 Pa. 89, Brua's App., 55 Pa. 294; Wagner v. Hildebrand, 187 Pa. 136.

*Samuel M. Clement, Jr.,* with him, *Frank Rogers Donahue,* for appellee.—It is entirely within the discretion of the court to decline points without reading them and to state the law to the jury in its own terms: Carey v. Buckley, 192 Pa. 276; Jones v. Greenfield, 25 Pa. Superior Ct. 315; Com. v. Swallow, 8 Pa. Superior Ct. 539; Muthersbaugh v. McCabe, 22 Pa. Superior Ct. 587; Long v. Reed, 16 Pa. C. C. Rep. 110; Scheuing v. Yard, 88 Pa. 286; McLain v. Com., 99 Pa. 86.

The accounts amounted to balances struck between the parties and they were always treated with the consent of the defendant as fixed balances: McClelland's Executor v. West, Admr., 70 Pa. 183.

Short sales may be speculative but are not all wagers:.Assigned Est. of L. H. Taylor & Co., 192 Pa. 306; Peters v. Grim, 149 Pa. 163; Fareira v. Gabell, 89 Pa. 89; Jennings v. Morris, 211 Pa. 600; Kirkpatrick v. Bonsall, 72 Pa. 155; Hirst v. Maag, 13 Pa. Superior Ct. 4.

OPINION BY MR. JUSTICE STEWART, March 7, 1910:

The chief matter assigned as error was the failure of the learned trial judge to read to the jury the thirteen points submitted by the defendant's counsel, and specifically rule upon

them. The reply made to those assignments is that the points, so far as relevant to the case, were substantially answered in the general charge, and that the charge was in all respects as favorable to the defendant as he could ask. The reply is sufficient, if correct in its statement of fact. First, as to the relevancy of the points. They are exactly the same as were submitted in Gaw v. Bennett, 153 Pa. 247. On appeal the ruling of the court affirming these points was sustained. The action there was upon a promissory note, and the defense set up was that the note had been given in settlement of a wagering contract. So far the cases are alike; but the resemblance stops right there. In the case referred to there was absolutely nothing from which the contract between the parties covering their mutual transactions could be derived except the course of dealing between them. One of the parties was dead, and the defense was urged by his legal representative. The transaction was left to speak for itself, and from it alone the understanding of the parties was to be ascertained. The points submitted were to meet this condition of the evidence. The transaction showed a purchase of some $70,000 of stock on defendant's account, at buyer's option, during the period of some three years; that none of the stock had been delivered to the defendant; that the only money he had ever paid to plaintiff was $400, which had been paid in a lump sum, not on account of the purchase of any particular stock, and the proceeds of 200 shares of railroad stock left with plaintiff to be sold. The only question was whether this evidence, taken in connection with that which related to defendant's financial condition during the period covered by the transaction, would support a finding by the jury that the contract between the parties was a wagering one. The points directed the jury's attention to the several features of the case which supposedly made for the defendant's contention, and which were thought sufficient in their combined strength to compel a submission of the case. Their inapplicability to the present case becomes apparent when we consider the real question that was there being inquired into, and the state of the evidence in regard to it. The only question here was, did the plaintiff, according to

the understanding between himself and the defendant, actually buy upon the latter's order the various stocks on which he has charged commissions, with a view to their delivery to the defendant, upon demand and payment therefor. The question as thus stated presents every element which can be considered in determining whether the transaction offends against law or policy. "A purchase of stock on margin for speculation is not necessarily a gambling transaction. If it is the intention of the parties that a real purchase shall be made by a transfer of them, although the delivery may be postponed or made to depend upon future conditions, the transaction is legal; if it is the intention that there is not to be a delivery to complete the purchase, but that the account is to be settled on the basis of a rise or fall in prices, it is a mere wager, and the contract cannot be enforced by either party:" Peters v. Grim, 149 Pa. 163; Wagner v. Hildebrand, 187 Pa. 136. The question being as stated, what was the evidence with respect to it? The plaintiff having introduced his note, rested. The defendant opened his case by calling the plaintiff to testify as under cross-examination. The witness produced the monthly statements covering every stock transaction. He testified that every share of stock appearing on these statements had been purchased by him outright, and that the certificates therefor had been delivered to him; that every share of this stock purchased for the defendant which defendant ordered to be sold, had been actually sold to the purchaser. He further produced on the trial the checks given for the stock purchased. The defendant was next called to the stand. There was absolutely nothing in his testimony to contradict or qualify any material statement made by the plaintiff. On the contrary, he testified that his understanding with the plaintiff was that the latter in buying upon his order was to buy the stocks outright; that it was not a transaction between them for the matching of differences, but that the stock was to be actually bought and sold as by him directed. The contract as testified to by both parties was not a wagering contract, and the testimony of plaintiff showing a course of dealing in strict conformity with the terms of the contract, was wholly uncon-

tradicted.  On this state of the evidence how could it have availed the defendant to have had the jury instructed to consider such circumstances as the extent of the transaction, the aggregate of the amounts involved, and the financial circumstances of the defendant?  These matters would have had significance in a dispute where the agreement between the parties was otherwise undisclosed, as in the case of Gaw v. Bennett, supra; but where, as here, both parties to the contract acquit themselves of all purpose to engage in wagering, and no evidence whatever is offered to show that the stocks were not purchased and sold outright upon the order of the complaining party, as testified to by the other, to allow a party to avoid his liability because of such circumstances as those suggested by the points, could only be justified on the ground that stock transactions are to be judged wagering whenever it appears that the losing party indulged beyond the point of prudence as measured by his financial ability.  That is not the law.  The evidence in the case was confined to the testimony of the parties themselves, and since it furnished nothing that overcame the prima facie case as established by the note itself, the learned trial judge would have committed no error had he given binding instructions for the plaintiff.

At the end of each month during the period covered by the transaction the plaintiff rendered to the defendant a statement of his account, including interest on the balance shown.  Upon the balance so shown interest was charged in the next succeeding statement and entered into the balance of that account; and so on throughout.  These monthly statements were accepted by defendant as correct and approved by him in writing.  In contemplation of law such acceptance was an admission of a precise debt due at that time.  When an account is settled and balanced up, the balance clearly bears interest, notwithstanding that interest has been added in the account: McClelland's Exr. v. West, 70 Pa. 183.

The assignments of error are overruled, and the judgment is affirmed.