# Miles's Estate.

*Will—Devise—Life estate—Trusts and trustees—Interest—Compound interest—Direction to sell—Condemnation of property devised—Word "buy."*

1. Where a testatrix who died in 1904, having suggested in his will that certain real estate was on the city plan, and having recited that it had been condemned, although such was not the case, directs that "in case the city buys the property" after her death and before the death of her brother, the trustees of her will shall set aside $50,000 out of the proceeds and pay the income thereof to her brother by monthly installments, for life, and the city condemns the land in 1906, the brother dies in 1914, and the damages including allowance of six per cent for delay are paid in 1921, the brother's estate is entitled to the $50,000 principal out of the damages and interest on the same at six per cent from 1906 to 1914, amounting to $21,500, and interest thereon from 1914.

2. The testatrix in using the word "condemned" meant simply to state her knowledge that the real estate was marked on the city's plan for future condemnation, and by the phrase "in case the city buys the property," used after the word "condemned," she meant in case the city actually appropriated and became liable to pay for the property.

3. In such case the common law rule fixing a life tenant's interest at one-third of the total purchase price of the premises involved, has no application.

4. Nor is interest on the installments payable between 1906 and 1914 allowable.

Argued January 12, 1922. Appeals, Nos. 176 and 183, Jan. T., 1922, by Margaret Gilchrist, Admrx., and Jessie W. Gregory, from decree of O. C. Phila. Co., April T., 1905, No. 642, dismissing exceptions to adjudication in estate of Mary J. Miles, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication of HENDERSON, J.

Exceptions dismissed in opinion of THOMPSON, J.; see 30 Pa. Dist. R. 700.

Margaret Gilchrist, administratrix of Wm. J. Miles, deceased, and Jessie W. Gregory, remainderman, took separate appeals.

*Error assigned,* among others, was decree, quoting it.

*Thos. Stokes,* of *Henry, Pepper, Bodine & Stokes,* for Jessie W. Gregory, appellant.—The money paid by the city is principal, and the life tenant's estate is not entitled to any of it: Conner's Est., 239 Pa. 449; Magee's Est., 26 Pa. Dist. R. 383.

No income accrued on the $50,000 fund until the purchase money was received by the trustee.

In no event should interest be allowed on the award to the administratrix of the estate of William J. Miles: Gunning's Est., 234 Pa. 148; Leech's App., 44 Pa. 140; Kerr v. Bosler, 62 Pa. 183; Page's App., 71 Pa. 402.

The estate of William J. Miles is not entitled to one-third of the purchase money as representing the value of his life estate.

*William H. Burnett,* for Margaret Gilchrist, administratrix of estate of William J. Miles, deceased, appellant.—The value of a life interest is one-third of the total value of the whole estate: Datesman's App., 127 Pa. 348; Shippen's App., 80 Pa. 391; Dennison's App., 1 Pa. 201; Henderson v. Henderson, 4 Pa. Dist. R. 688; Shorb v. Parr, 4 Pa. C. C. R. 460.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, February 13, 1922:

There are two appeals before us, from a decree of distribution of the Orphans' Court of Philadelphia County, on the adjudication of the account of the Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee under the will of Mary J. Miles, deceased; the appellants are, first, Margaret Gilchrist, administratrix of William J. Miles, deceased, who complains because the estate of her decedent, having a certain life interest under the will of the testatrix, was not given as large an award as she thinks it entitled to; and, second, Jessie W. Gregory, the remainderman, who contends that there should have been no award at all to the aforesaid estate, and, in any event, the one made was too large. The two appeals are disposed of together in this opinion; we shall later restate the respective contentions, with greater particularity, when we consider them.

Testatrix died in 1904, leaving a will, dated December 22, 1903, in which she provided for her brother, inter alia, as follows: She gave to the above-named trustee a piece of real estate owned by her at 1428 Arch Street, Philadelphia, in trust, to collect and pay the net income to William J. Miles, during life, and, at his death, "to sell said property, provided it is not on the city plan," the proceeds to be divided among certain designated persons; but "said sale not to take place if the city still intends buying said property as at the present time." Later in the will, testatrix provided: "my house and lot 1428 Arch Street, before mentioned, has been condemned

by the City of Phila., on account of the proposed Boulevard......In case the city buys the property after my death and my brother William J. Miles still survives, [my said trustee,] after first paying the mortgage on said property out of the proceeds of sale, shall set aside $50,000 to be invested, the income thereof to be paid quarterly to my brother......during the term of his natural life"; then she provided that, at the death of William J. Miles, the $50,000 should go to others, and, by a codicil, that her brother should be paid his income from her estate monthly, instead of quarterly.

The life tenant died in 1914, but no money came into the hands of the trustee from the city until 1921. The facts attending the acquirement of 1428 Arch Street by the municipality, and concerning the purchase money which it paid, are as follows: The property had not been "condemned" at date of testatrix's will, as stated in the above excerpt therefrom, but, as suggested earlier in the will, was plotted on the city plan as part of the Parkway improvement; subsequently, it was condemned (Philadelphia Parkway Case, 250 Pa. 257), and the jury of view fixed November 6, 1906, as the date of the appropriation. The original award, of $326,506.95, was divided thus: market value of property, "as of November 6, 1906," $207,900, and interest from that day to date of award, May 10, 1916, $118,606.95. The trustee appealed to the court of common pleas, and a verdict was rendered there for a larger amount; the city appealed to the Supreme Court, and judgment on the verdict was reversed; subsequently, on a retrial in the common pleas, the trustee obtained a verdict for $520,000, but, on the city's appeal, this was reversed; finally, on March 7, 1921, a verdict in favor of the trustee was entered by agreement for $497,500. The record shows that the last mentioned amount includes "compensation for delay in the nature of interest," and a "statement of admitted facts," signed by counsel, says it "includes the market value and damages for detention"; but the exact amounts allotted to these items, respectively, are not shown.

The court below decided that William J. Miles was entitled to the annual income on $50,000 from the date when the city had so far taken the property that the price thereof, even if not then fixed in amount, was due and payable, viz, November 7, 1906, and that this must have been what the testatrix meant by the phrase "in case the city buys"; accordingly, an award was made, to the administratrix of the life tenant's estate, of $21,500, representing the accumulation of such income from November 7, 1906, the day of the appropriation by the city, to January 6, 1914, the time of William J. Miles's death, interest at six per cent, on this judicially ascertained amount, to run from the latter date.

The administratrix of the estate of the life tenant contends, on her appeal, that she is entitled to interest on $125,626.92, being one-third of the value of the premises in question, instead of on the fixed amount of $50,000; and, if this is not agreed to, then that each annual installment of income should bear interest from the date it fell due and the award be increased accordingly.

On the other hand, the remainderman contends, on her appeal, that, since the condemned property was not physically taken until after the death of the life tenant, his estate is not entitled to any award, and, if so entitled, interest should not be allowed on the total income due at the death of the life tenant, but only from the date when the money actually came into the hands of the trustee.

The circumstances presented on these appeals are unique in many particulars; but, after study and consideration, we think the conclusions reached by the court below work comparative justice between the parties, without offending any fixed rules of law. While the award to the trustee fails to state precisely the value of the real estate and how much was given as damages for detention, the record sufficiently shows that such damages were allowed, and it was agreed by counsel, at argument, that these damages represent interest (necessarily,

on the present record, at six per cent: Whitcomb v. City, 264 Pa. 277, 284) from November 7, 1906, and, further, that, in adjusting the matter, no consideration was given to deductions, for income, or rents, received during the period involved (Pa. Co. v. City, 262 Pa. 439, 443); hence it is a mere matter of calculation to arrive at the respective amounts which make up the award. It is not necessary, however, to consider such details so far as the present appeals are concerned, since the $50,000, to be set aside during the life of William J. Miles to provide income for him, is in effect charged by the testatrix on the proceeds of the property, from the time the city might buy it to the date of the life tenant's death; and whoever collected the award of damages from the municipality, even though it all be accounted principal, would, on the facts at bar, take the fund subject to that charge. The controlling question is: At what date did the city "buy," according to the meaning of that word as used in testatrix's will?

In answer to the question just stated, we agree with the court below, when the will is read as a whole, it is reasonably clear, the testatrix meant by the word "condemned" simply to state her knowledge that 1428 Arch Street was marked on the city plan for future condemnation; and, by the phrase "in case the city buys the property," used immediately after the word "condemned," the testatrix meant, "in case the city actually appropriates and becomes liable to pay for the property"; finally, by the provision that, "after first paying the mortgage," etc., the trustee should set aside the $50,000, etc., the testatrix intended to first charge, on the purchase money paid by the city, the payment of the mortgage, to which the real estate in question was then subject, and next to charge on such purchase money the $50,000, to be set aside so that the income thereof might be paid to her brother during his life.

We agree with the court below that, since the trustee received six per cent simple interest,—this being the pre-

vailing rate (Whitcomb v. City, supra),—from November 7, 1906, to a date after the death of the life tenant, the award to the latter's estate, of $21,500, was properly computed. We also agree that, under the circumstances here presented, the estate of the life tenant is entitled to but the total of the annual installments of income from the $50,000 which accrued during his life, without allowance of interest on these from the times they respectively became due; for, what the testatrix contemplated was monthly payments of income as collected, possibly varying in amount, not the payment at established dates of definite sums, which, if not liquidated at such times, would bear interest. We further agree that, since a fixed amount, namely, $21,500, was judicially ascertained to be due and payable at the death of the life tenant, interest properly runs thereon from that date to time of payment. Finally, the common law rule, referred to in Datesman's Appeal, 127 Pa. 348, 359, fixing a life tenant's interest at one-third of the total purchase price of premises involved, is a rule of convenience, which has no application where, as here, the will itself determines the value of the share of the life tenant, when a sale takes place. Under no circumstances would the present life tenant have been entitled to an award of one-third of the entire purchase price paid by the city, because the will specifically states otherwise; the testatrix directed that, if the city bought the property, $50,000 should be set apart by the trustee to be invested for the life tenant, hence an award to the estate of the latter of one-third of the entire fund could not be made without violating this express direction, and the court below correctly so decided.

Conner's Est., 239 Pa. 449, 451, relied on by one of the appellants, is readily distinguishable on its facts from the present case. We see no merit in any of the assignments of error; they are all overruled.

The decree is affirmed, costs to be paid out of fund for distribution.